# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. 14-CR-3055-LRR |
| vs. | **ORDER** |
| ISMAEL TAMAYO-BAEZ, | |
| Defendant. | |

## I. INTRODUCTION

The matter before the court is Defendant Ismael Tamayo-Baez's Amended and Substituted Objections ("Objections") (docket no. 34) to United States Chief Magistrate Judge Jon S. Scoles's Report and Recommendation (docket no. 23), which recommends that the court deny Defendant's Motion to Suppress ("Motion") (docket no. 16).

## II. RELEVANT PROCEDURAL BACKGROUND

On October 28, 2014, a grand jury returned an Indictment (docket no. 2) charging Defendant with illegal reentry into the United States in violation of 8 U.S.C. § 1326(a). On December 3, 2014, Defendant filed the Motion. On December 12, 2014, the government filed a Resistance (docket no. 19). On December 17, 2014, Judge Scoles held a hearing ("Hearing") on the Motion. *See* December 17, 2014 Minute Entry (docket no. 21). Defendant appeared in court with his attorney, Rockne Cole. Assistant United States Attorney Daniel Tvedt represented the government. On December 24, 2014, Judge Scoles issued his Report and Recommendation, which recommends that the court deny the Motion. On January 22, 2015, Defendant filed his Objections. In the Objections, Defendant requests a hearing. The government has not filed a Resistance. The court finds a hearing is unnecessary. Thus, the Report and Recommendation and the Objections are fully submitted and ready for decision.

## III. STANDARD OF REVIEW

When a party files a timely objection to a magistrate judge's report and recommendation, a "judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge must consider de novo any objection to the magistrate judge's recommendation."); *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) (noting that a district judge must "undertake[] a de novo review of the disputed portions of a magistrate judge's report and recommendations"). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions."). It is reversible error for a district court to fail to engage in a de novo review of a magistrate judge's report when such review is required. *Lothridge*, 324 F.3d at 600. Accordingly, the court reviews the disputed portions of the Report and Recommendation de novo.

## IV. RELEVANT FACTUAL BACKGROUND[1]

On the morning of October 23, 2014, Immigration and Customs Enforcement ("ICE") Agent Kevin Taylor traveled to Defendant's residence in Hampton, Iowa to arrest Defendant for unlawfully reentering the United States. ICE investigators suspected Defendant had unlawfully reentered the United States after learning through an unrelated investigation that Defendant had been removed from the United States in 2004, yet he had

---

[1] After reviewing the hearing transcript, the court finds that Judge Scoles accurately and thoroughly set forth the relevant facts in the Report and Recommendation. *See* Report and Recommendation at 2-5. Accordingly, the court only briefly summarizes the facts. When relevant, the court relies on and discusses additional facts in conjunction with its legal analysis.

2

been convicted of domestic abuse assault in 2009, with no record that Defendant had received lawful reentry to the Untied States. Shortly after arriving at Defendant's home, Agent Taylor saw a male matching Defendant's description get into a Jeep and drive away.

After Agent Taylor witnessed Defendant pick up a passenger, Agent Taylor initiated a traffic stop by activating the emergency lights and siren on his vehicle. The Jeep promptly pulled over and Agent Taylor walked up to the driver's side of the vehicle and asked Defendant to identify himself. Defendant identified himself as Ismael Tamayo or Ismael Tamayo-Baez. Defendant then answered Agent Taylor's questions regarding Defendant's date of birth, county of birth and country of citizenship. Defendant also admitted that he was in the United States illegally. At that point, Agent Taylor placed Defendant under arrest.

## V. ANALYSIS

In the Objections, Defendant objects to "several omissions of material fact relating to Agent Taylor's inability to identify [Defendant] prior to pulling him over," and Judge Scoles's legal conclusion "that there was reasonable suspicion of criminal activity to justify a *Terry* stop." Objections at 2 (formatting omitted).

### A. Omission of Facts

Defendant argues that Judge Scoles omitted several material facts because Agent "Taylor repeatedly testified that he did not know who was driving the vehicle before he pulled it over." Brief in Support of the Objections (docket no. 34-1) at 2. Specifically, Defendant argues that Agent Taylor testified that he

> arrived at the address where he believed [Defendant] to be staying . . . . that after waiting there a while, [he] seen a male walk out of the garage . . . . [and] followed the suspect to see if [he] could positively identify the subject . . . . [and he was] hoping maybe [Defendant] would stop at a gas station or something before they left, but they started to get to the edge of town, so [he] decided to do a vehicle stop to see if it was [Defendant] in the vehicle.

3

*Id.* at 2-3. At the Hearing, Agent Taylor admitted that he "did not 100 percent know who was in the vehicle." Hearing Transcript ("Transcript") (docket no. 31) at 19-20. However, Agent Taylor also testified that he "had reason to believe that an individual that was here in violation of immigration law was possibly driving [the] vehicle," and that he "had reason to believe that [Defendant] was the driver as [he] had seen someone matching [Defendant's] description leave [Defendant's] home and get into the vehicle and drive away." *Id.* at 20, 21, 23. Thus, after reviewing the transcript, the court finds that Judge Scoles accurately and thoroughly set forth the relevant facts and did not omit any material facts. Accordingly, the court rejects Defendant's objection that Judge Scoles omitted material facts.

### B. Reasonable Suspicion

#### 1. Legal standard

The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. Const. amend. IV. "A traffic stop constitutes a seizure of [a] vehicle's occupants, including any passengers." *United States v. Hollins*, 685 F.3d 703, 705 (8th Cir. 2012) (quoting *United States v. Sanchez*, 572 F.3d 475, 478 (8th Cir. 2009)) (internal quotation marks omitted) (alteration in original). "To be reasonable, the stop must be supported by at least 'reasonable suspicion to believe that criminal activity may be afoot.'" *Sanchez*, 572 F.3d at 478 (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)). A court considers "the totality of the circumstances in reviewing whether the police had reasonable suspicion to stop [a] vehicle." *United States v. Bell*, 183 F.3d 746, 749 (8th Cir. 1999). An officer has reasonable suspicion justifying a traffic stop "when the officer is aware of 'particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed.'" *United States v. Houston*, 548 F.3d 1151, 1153 (8th Cir. 2008) (quoting *United States v. Martin*, 706 F.2d 263, 265 (8th Cir. 1983)).

4

*2. Application*

Defendant objects to Judge Scoles's "finding that there was reasonable suspicion of criminal activity to justify a *Terry* stop." Brief in Support of the Objections at 3 (formatting omitted). Defendant makes two arguments in support of his objection, and the court will address each in turn.

First, Defendant argues that "Agent Taylor had nothing more than a hunch that Defendant was driving the vehicle, which is not sufficient to justify a *Terry* stop." *Id.* at 5. The court agrees that a mere hunch is not sufficient to justify a *Terry* stop. *See Arvizu*, 534 U.S. at 274 ("Although an officer's reliance on a mere 'hunch' is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying the preponderance of the evidence standard.") (citations omitted); *Terry v. Ohio*, 392 U.S. 1, 27 (1968) ("And in determining whether [an] officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience."). However, Defendant's argument that Agent Taylor had nothing more than a "hunch" is a significant mischaracterization.

Prior to stopping the vehicle, Agent Taylor knew that,

> ICE investigators ran [a Jeep] license plate during an [unrelated] investigation into the fraudulent use of social security numbers [at a work site]. Further checking revealed Defendant was associated with the registered owner of the vehicle, had been removed from the United States in 2004, but was subsequently convicted of a crime in Iowa in 2009. Investigators also discovered a photograph showing Defendant standing in front of a black Jeep Cherokee, which matched the description of the vehicle seen at the work site. There [were] no records indicating Defendant obtained official permission to return to the United States.

Report and Recommendation at 6. In addition, Agent Taylor "had reason to believe that [Defendant] was the driver as [he] had seen someone matching [Defendant's] description leave [Defendant's] home and get into the vehicle and drive away." Transcript at 23. The evidence from the ICE investigation and Agent Taylor witnessing someone matching Defendant's description leave the house amounted to much more than a mere hunch. When Agent Taylor conducted the traffic stop he was aware of "'particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant[ed] [a] suspicion that a crime [was] being committed.'" *Houston*, 548 F.3d at 1153 (quoting *Martin*, 706 F.2d at 265). Thus, Agent Taylor possessed reasonable suspicion that Defendant had unlawfully reentered the United States, which authorized Agent Taylor to stop the Jeep and conduct an investigation.

Second, Defendant argues that Agent Taylor repeatedly testified that he "did not know that the person driving the [Jeep] was [Defendant]" and thus, Agent Taylor "had no particularized evidence that the person driving the vehicle was indeed the person that . . . they were investigating for illegal reentry." Brief in Support of the Objections at 6. Again, the court finds this is a significant mischaracterization.

Agent Taylor admitted that he "did not 100 percent know who was in the vehicle." Transcript at 19-20. However, Agent Taylor testified that he "had reason to believe that an individual that was here in violation of immigration law was possibly driving [the] vehicle," and that he "had reason to believe that [Defendant] was the driver as [he] had seen someone matching [Defendant's] description leave [Defendant's] home and get into the vehicle and drive away." *Id.* at 20, 21, 23. Agent Taylor did not need to know with 100 percent certainty that Defendant was in the Jeep in order to possess reasonable suspicion justifying the traffic stop. *See Arvizu*, 534 U.S. at 274 ("Although an officer's reliance on a mere 'hunch' is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably

6

short of satisfying the preponderance of the evidence standard.") (citations omitted). As previously discussed, the evidence from the ICE investigation, coupled with Agent Taylor witnessing someone matching Defendant's description leave the house, made Agent Taylor aware of "'particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant[ed] [a] suspicion that a crime [was] being committed.'" *Houston*, 548 F.3d at 1153 (quoting *Martin*, 706 F.2d at 265). Because the court finds no basis to disturb Judge Scoles's findings, the court rejects Defendant's argument that Agent Taylor did not possess reasonable suspicion.

Accordingly, the court overrules Defendant's objection to Judge Scoles's legal conclusion that there was reasonable suspicion justifying Agent Taylor's traffic stop.

## VI. CONCLUSION

In light of the foregoing, the court **ORDERS**:

(1) The Objections (docket no. 34) are **OVERRULED**;

(2) The Report and Recommendation (docket no. 23) is **ADOPTED**; and

(3) The Motion to Suppress (docket no. 16) is **DENIED**.

**DATED** this 2nd day of March, 2015.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA