# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. 14-CR-3055-LRR |
| vs. | **ORDER** |
| ISMAEL TAMAYO-BAEZ, | |
| Defendant. | |

_____

## *I. INTRODUCTION*

The matter before the court is Defendant Ismael Tamayo-Baez's "Motion to Collaterally Attack Prior Order of Removal" ("Motion") (docket no. 17).

## *II. RELEVANT PROCEDURAL HISTORY*

On October 28, 2014, the grand jury returned a one-count Indictment (docket no. 2) against Defendant. The Indictment charged Defendant with illegally re-entering the United States after having been removed in violation of 8 U.S.C. § 1326(a). On December 3, 2014, Defendant filed the Motion. In the Motion, Defendant requested an evidentiary hearing. On December 12, 2014, the government filed a Resistance (docket no. 20). On February 4, 2015, the court held an evidentiary hearing ("Hearing"). *See* February 5, 2015 Minute Entry (docket no. 47). The time for Defendant to file a reply brief has run. *See* LCrR 47(a) ("Local Rule 7 governs motion procedure in criminal cases . . . ."); LR 7(g) ("[T]he moving party may, within 7 days after a resistance to a motion is served, file a reply brief . . . ."). Thus, the Motion is fully submitted and ready for decision.

## III.  RELEVANT FACTUAL BACKGROUND[1]

The United States Border Patrol encountered Defendant on April 6, 1997, April 13, 1997, April 19, 1997, April 21, 1997 and April 23, 1997.  Each time Defendant received a voluntary return to Mexico.

On February 24, 2004, Defendant was convicted of domestic abuse assault and two counts of making false licenses in the Iowa District Court for Franklin County, and sentenced to 104 days' imprisonment on each count.

On February 26, 2004, Defendant received a Notice of Rights and Request for Disposition ("Notice of Rights") (Exhibit 1) printed in Spanish.  The Notice of Rights informed Defendant that he was arrested for being in the United States illegally, and that he had a "right to a hearing before the Immigration Court to determine whether [he] may remain in the United States."  *Id*.  The Notice of Rights also informed Defendant of several other rights.  First, the Notice of Rights stated that Defendant had "the right to contact an attorney or other legal representative to represent [Defendant] at [his] hearings, or to answer any questions regarding [his] legal rights in the United States."  *Id*.  Second, the Notice of Rights stated that if Defendant requested a hearing he could be detained or released on bond pending the hearing.  *Id*.  Finally, the Notice of Rights stated that Defendant could request to be returned to his country as soon as possible, without a hearing.  *Id*.

In the Notice of Rights, under the Request for Disposition section, Defendant checked and initialed the box stating, in Spanish,

> I admit that I am in the United States illegally, and I believe that I do not face harm if I return to my country.  I give up my right to a hearing before the Immigration Court.  I wish to return to my country as soon as arrangements can be made to

---

[1] When relevant, the court relies on and discusses additional facts in conjunction with its legal analysis.

> effect my departure. I understand that I may be held in detention until my departure.

*Id.* Defendant signed and dated the Notice of Rights and an immigration officer signed and dated the Certification of Service, which states that Defendant read the form in Spanish and an immigration officer read the form to Defendant in Spanish. *Id.*

On February 26, 2004, Defendant received a Notice to Appear before an Immigration Judge ("Notice to Appear") (Exhibit 2). The Notice to Appear set forth Defendant's rights at the removal hearing, including his right to appeal an adverse decision by the Immigration Judge. *Id.* at 2. An immigration agent certified that an immigration officer read the Notice to Appear to Defendant in Spanish. *Id.* Defendant refused to sign under the Request for Prompt Hearing section, but did sign under the Certificate of Service section. *Id.*

On February 26, 2004, Defendant received a Stipulated Request for Removal Order and Waiver of Hearing ("Stipulation") (Exhibit 3). The Stipulation was printed in both English and Spanish and Defendant stipulated, in relevant part, that he waived his right to a removal hearing, requested that removal proceedings be held without a hearing and that the Immigration Judge issue an order based on the written record. *Id.* In the Stipulation, Defendant admitted that (1) he was not a citizen of the United States; (2) he was a citizen and native of Mexico; (3) he arrived in the United States near Nogales, Arizona, on or about May 4, 1998; and (4) he was not then admitted or paroled after inspection by an immigration officer. Exhibit 2 at 1.

On March 9, 2004, an Immigration Judge ordered that Defendant be removed from the United States. *See* Decision of the Immigration Judge (Exhibit 4). On March 17, 2004, Defendant was removed to Mexico. On October 23, 2014, Defendant was arrested in Hampton, Iowa.

On February 4, 2015, the court held the Hearing. At the Hearing, Defendant testified that he was not advised of his rights in Spanish. Specifically, Defendant testified

that contrary to the government's evidence, no one read to him in Spanish the Notice of Rights, Notice to Appear, Stipulation or Decision of the Immigration Judge (collectively, "Documents"). Defendant also testified that because of his limited education, he could only understand a portion of the Spanish that he read from the Documents. Finally, Defendant testified that while it was his understanding that he was signing the Documents to get a voluntary departure, he did not ask the immigration officers what the Documents meant or alert the immigration officers that he was confused by anything at that time.

## IV. ANALYSIS

Defendant bears the burden of proof when seeking to collaterally attack his prior deportation order. *United States v. Martinez-Amaya*, 67 F.3d 678, 681 (8th Cir. 1995). Due process requires "that where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be some meaningful review of the administrative proceeding." *United States v. Mendoza-Lopez*, 481 U.S. 828, 837-38 (1987) (emphasis omitted). Congress codified this requirement in 8 U.S.C. § 1326(d), which provides that:

> In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order described in subsection (a)(1) of this section or subsection (b) of this section unless the alien demonstrates that
>
> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
>
> (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
>
> (3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d). These "requirements are conjunctive, and thus [Defendant] must establish all three in order to succeed in his challenge to his removal order." *United States*

4

*v. Fernandez-Antonia*, 278 F.3d 150, 157 (2d Cir. 2002). The court finds that Defendant fails to establish any of the three requirements.

### A. *Exhaustion*

Defendant argues that he is excused from exhausting administrative remedies because he was not advised of his rights in Spanish and the removal order "did not state that he could seek ultimate[] . . . review in federal court." Brief in Support of the Motion (docket no. 17-1) at 8. The government counters that "Defendant has produced no evidence that he exhausted any available administrative remedies in seeking relief against the 2004 removal/deportation order" and "[i]n fact, [D]efendant acknowledges that he has not exhausted administrative remedies." Brief in Support of Resistance to the Motion ("Government Brief") (docket no. 20-1) at 6.

#### 1. *Advised of rights in Spanish*

Defendant argues that he was not advised of his rights in Spanish because his rights were not read to him in Spanish and his limited education prevented him from understanding the Documents printed in Spanish. The court agrees with Defendant that *if* Defendant was not advised of his rights in Spanish, he could not be found to have validly waived his right to contest his 2004 removal because such a waiver would not be voluntary and intelligent. *See Richardson v. United States*, 558 F.3d 216, 219-20 (3d Cir. 2009) (citing *Mendoza-Lopez*, 481 U.S. at 840) ("An alien validly waives his rights associated with a deportation proceeding only if he does so voluntarily and intelligently."). However, the court finds that the government presented credible evidence demonstrating that Defendant knowingly and voluntarily waived his right to contest his 2004 removal. *See United States v. Martinez-Rocha*, 337 F.3d 566, 569 (6th Cir. 2003) (finding that a waiver was knowing and intelligent where the defendant "signed a form stating that he did not wish to contest the charges that [were] read to him in both English and Spanish" and "expressed a desire to return to Mexico as soon as possible"). Specifically, Defendant

5

received the Notice of Rights, which gave him notice of his rights and he checked a box which stated, in Spanish:

> I admit that I am in the United States illegally, and I believe that I do not face harm if I return to my country. I give up my right to a hearing before the Immigration Court. I wish to return to my country as soon as arrangements can be made to effect my departure. I understand that I may be held in detention until my departure.

Exhibit 1 at 1. Defendant not only checked the box, but the immigration officer also indicated that Defendant had read the form and that the immigration officer read the form to Defendant in Spanish. *Id.* Defendant also signed the Stipulation, which stated, "I wa[i]ve . . . my right to have a hearing, to be advised by the Immigration Judge of any apparent eligibility of relief from deportation, to present witnesses and evidence on my behalf, and to require the government to prove my deportability." Exhibit 3 at 1. On that same document, Defendant agreed that,

> I waive my right to apply for relief from deportation . . . . I understand that by accepting an order of removal, I give up my right to apply for any relief for which I might have been eligible . . . I will accept a written order for my removal . . . and I waive appeal of the written order for my Removal from the United States.

*Id.* at 2. The Stipulation was written in both Spanish and English, and Defendant signed to certify that he read the form. *Id.* at 3.

Defendant makes only a bare assertion that he was not advised of his rights in Spanish. While Defendant testified at the Hearing that no one read him his rights in Spanish, the court finds that Defendant's testimony is not credible. In light of the government's evidence to the contrary, the record belies Defendant's allegation, and Defendant fails to provide any basis upon which the court could find that Defendant was not read his rights in Spanish. Defendant also testified that his limited education prevented him from understanding the Documents printed in Spanish. Defendant testified that his

6

signature appeared on all of the Documents, that he does not sign documents he does not understand and that he never asked the immigration officers what the Documents meant or alert the immigration officers that he was confused about any of the Documents that he signed. This testimony further underscores the documentary evidence that suggests that Defendant did in fact read and understand the Spanish printed on the Documents. Thus, the court finds that Defendant was advised of his rights in Spanish and that Defendant is not excused from exhausting administrative remedies.

### 2. *Review in federal court*

The court similarly finds unpersuasive Defendant's argument that he is excused from exhausting administrative remedies because the removal order did not state that he could seek review in federal court. Defendant cites the dissent in *United States v. Rodriguez*, 420 F.3d 831, 835-36 (8th Cir. 2005) to support his position. However, the majority opinion—the only portion binding on this court—explicitly states that "[n]o right to petition for review in federal circuit court arises unless an alien first appeals to the [Board of Immigration Appeals]." *Rodriguez*, 420 F.3d at 834 n.3. Here, Defendant was informed of his right to appeal but chose to waive such right. *See* Exhibit 3 at 1-2 ("I wa[i]ve my . . . right to have a hearing, to be advised by the Immigration Judge of any apparent eligibility of relief from deportation" and "I will accept a written order for my removal . . . and I waive appeal of the written order for my Removal from the United States."). Accordingly, the court finds that Defendant did not exhaust his administrative remedies, and the court shall deny the Motion for this reason.

### B. *Opportunity for Judicial Review*

Defendant argues that he was denied his opportunity for judicial review because he was not advised of his rights in Spanish. The government counters that "[D]efendant fails to identify anything that deprived him of his right to judicial review." Government Brief at 9. The court agrees. *See United States v. Gonzalez-Villalobos*, 724 F.3d 1125, 1132

(9th Cir. 2013) ("[W]here the defendant has failed to identify any obstacle that prevented him from obtaining judicial review of a deportation order, he is not entitled to such review as part of a collateral attack under 8 U.S.C. § 1326(d)."); *Rodriguez*, 420 F.3d at 834 n.3 (finding that "[a]t a minimum, [the defendant] was aware that he had a right to challenge [the] order with an appeal to the [Board of Immigration Appeals], and he knowingly waived that right. No right to petition for review in federal circuit court arises unless an alien first appeals to the [Board of Immigration Appeals]"). As previously discussed, Defendant was advised of his legal rights in Spanish, and he voluntarily and intelligently waived his right to judicial review. *See* Exhibit 3 at 3 ("I can unequivocally state that I have submitted this [Stipulation] voluntarily, knowingly, and intelligently."). Thus, Defendant was not deprived of the opportunity for judicial review. Accordingly, for this additional reason, the court shall deny the Motion.

### C. *Fundamental Fairness*

To show that an error rendered the proceedings fundamentally unfair, an alien must show that the error resulted in actual prejudice. *Rodriguez*, 420 F.3d at 834 (citing *United States v. Torres-Sanchez*, 68 F.3d 227, 230 (8th Cir. 1995). "Actual prejudice exists where defects in the deportation proceedings may well have resulted in a deportation that would not otherwise have occurred." *Id.* (quoting *Torres-Sanchez*, 68 F.3d at 230) (internal quotation marks omitted).

Defendant argues that the proceeding was fundamentally unfair for two reasons. First, Defendant argues that "all of the rights Defendant was giving up were explained in English, and the waiver of his right to an immigration hearing was all done in English." Brief in Support of the Motion at 3. As previously discussed, the court rejects Defendant's allegation that he was not advised of his rights in Spanish. Accordingly, to the extent Defendant argues the proceedings were fundamentally unfair because he was not advised of his rights in Spanish, the court shall deny the Motion.

8

Second, Defendant argues that he "was prejudiced by [his] inability to seek voluntary departure due to the failure to have his right to a hearing" and his right to seek voluntary departure explained to him. *Id.* at 5. Specifically, Defendant argues that the Immigration Judge's "failure to inform . . . Defendant of his apparent eligibility for pre-conclusion voluntary departure and of the differences between pre-conclusion and post-conclusion voluntary departure violated . . . Defendant[']s procedural due process rights." *Id.* at 6. The court disagrees. *See Escudero-Corona v. I.N.S.*, 244 F.3d 608, 614 (8th Cir. 2001) (holding that due process "requires only that an alien receive notice and a fair hearing where the [Immigration and Naturalization Service] must prove by clear, unequivocal, and convincing evidence that the alien is subject to deportation") (citing *Afolayan v. I.N.S.*, 219 F.3d 784, 789 (8th Cir. 2000) (internal quotation marks omitted). "[A] majority of circuits have rejected the proposition that there is a constitutional right to be informed of eligibility for—or to be considered for—discretionary relief." *United States v. Santiago-Ochoa*, 447 F.3d 1015, 1020 (7th Cir. 2006) (collecting cases, including *Escudero-Corona*, 244 F.3d at 608). Accordingly, for this additional reason, the court shall deny the Motion.

## V. CONCLUSION

In light of the foregoing, Defendant Ismael Tamayo-Baez's "Motion to Collaterally Attack Prior Order of Removal" (docket no. 17) is **DENIED**.

**IT IS SO ORDERED.**

**DATED** this 4th day of March, 2015.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA